IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DAVID LEE SIMMONS, | CV. 08-343-PK |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| PETER DEUEL, et al., | |
| Defendants. | |

PAPAK, Magistrate Judge:

     Plaintiff David Simmons asserts a federal habeas claim as well as civil rights claims under and 42 U.S.C. §§ 1983 and 1985 to enjoin a state criminal prosecution against him on the grounds that it violates his right to be free from double jeopardy under the Oregon and U.S. Constitutions and that it violates Oregon Revised Statute § 131.515. Defendants Deuel, LeRiche, Tuttle and Tweedt (State Defendants) respond that Simmons has failed to show a likelihood of success on the merits, which is required to support preliminary injunctive relief.

     This court has jurisdiction over the parties pursuant to 28 U.S.C. §§ 2241 and 1331. For

Page 1 - FINDINGS AND RECOMMENDATION

the reasons set forth below, Plaintiff's request for preliminary injunction should be denied.

## LEGAL STANDARD

### A.  Standard for Injunctive Relief

A plaintiff seeking a preliminary injunction must demonstrate either 1) a likelihood of success on the merits and a possibility of irreparable injury, or 2) the existence of serious questions on the merits and a balance of hardships tipping in its favor.  *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).  "If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly."  *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991).  However, the moving party must show "as an irreducible minimum that there is a fair chance of success on the merits." *Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994).

### B.   Federal Habeas Review

When no valid judgment of conviction exists at the time a petitioner files a federal habeas petition,  28 U.S.C. § 2241 is the proper jurisdictional statute, not § 2254.  *Stow v. Murashige*, 389 F.3d 880, 882 (9th Cir. 2004); *see also White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004).  Thus, the habeas petitioner need not meet the stringent review standards imposed under 28 U.S.C. § 2254.  *Stow,* 389 F.3d at 886-88.  Rather, the court can conduct a *de novo* review of the federal constitutional issues.  *Id.*[1]

---

[1] A state-court judgment of conviction "is not res judicata" on federal habeas with respect to federal constitutional claims.  *Wright v. West*, 505 U.S. 277, 287 (1992) (quoting *Brown v. Allen*, 344 U.S. 443 (1953)); *see also* Erwin Chemerinsky, Federal Jurisdiction § 15.5 (5th ed. 2007).

Page 2 - FINDINGS AND RECOMMENDATION

## FACTUAL BACKGROUND

In September 2006, Mr. Simmons was arrested on suspicion of rape and sodomy on allegations arising from his sexual relationship with a 14-year-old girl, who was three years younger than him at the time.[2] (#1.) The information charged him with Rape in the Third Degree and Sodomy in the Third Degree. (#4, Ex.1.)[3] The government opposed his release and the court held him in custody. (#4, Ex. 2.)

On October 5, 2006, the Jefferson County District Attorney's office (State Defendants Deuel and LeRiche) presented a proposed indictment to the Jefferson County Grand Jury. The proposed indictment alleged six felonies – four counts of Rape in the Third Degree and two counts of Sodomy in the Third Degree, with the same victim, at specific locations, between the dates of September 25, 2005 and September 24, 2006. (#4, Ex. 6.) The Jefferson County Grand Jury returned a not true bill on all six counts. (#4, Ex. 6.) Neither the prosecutor nor the clerk of court took notice of this fact.

On October 6, 2006, the court attempted to arraign Simmons. (#4, Ex. 7.) The electronic communication system between the Jefferson County Jail and the court was not working. As a result, Simmons could not communicate with the courtroom, including his court-appointed counsel, Defendant Kimble. The court indicated on the record that the hearing could not proceed.

---

[2] Mr. Simmons turned 18 years old during the relationship.

[3] Simmons and the State Defendants stipulated to the exhibits referred to herein for the purposes of this Court's ruling on the motion for preliminary injunction.

Page 3 - FINDINGS AND RECOMMENDATION

On October 10, 2006, Deputy District Attorney LeRiche sent a plea offer to Kimble. (#4, Ex. 9.) The plea offer provided that, in exchange for Simmons' guilty plea on one count each of rape and sodomy, the government would dismiss the remaining four counts and recommend a 30-day sentence in jail, among other terms. In addition, the government agreed to "furlough" Simmons from jail pending sentencing. (#4, Ex. 10.)

Simmons pled guilty as agreed. (#4, Ex. 10.) Kimble apparently had not noticed that the grand jury returned the indictment as a not true bill. The court released Simmons to house arrest at his mother's residence and directed him to return to court for sentencing.

Simmons appeared for sentencing as ordered. (#4, Ex. 13.) The court, apparently also unaware of the not true bill, adopted the plea bargain and sentenced Simmons to five years of probation on various terms, including sex offender registration, and to one month in jail, with credit for time served. Simmons completed his 30-day sentence on October 31, 2006 and was released from custody.

Also on October 31, the presiding grand juror, prompted by a local newspaper article on Simmons' conviction, informed Deputy District Attorney LeRiche that the grand jury had returned a not true bill. (#4, Ex. 15.) LeRiche notified Kimble and the court that the case had been improperly prosecuted. The court met with all the attorneys on the case to discuss the matter. The court contacted Defendant Brendon Alexander to ask him to serve as Simmons' new court-appointed defense counsel. (#4, Ex. 16.)

After the meeting, Kimble notified Simmons of the error and gave him a letter that stated that he might have a claim against her as a result of it. (#4, Ex. 15.) She also indicated that the charges would be dismissed at a hearing later that day and that the State intended to bring new

Page 4 - FINDINGS AND RECOMMENDATION

misdemeanor charges regarding the same subject matter.

Later that same day, despite Kimble's possible conflict of interest as a result of her error, Kimble represented Simmons at a hearing to vacate the prior judgment of conviction. (#4, Ex. 16.) At the hearing, in open court, Kimble indicated that Simmons stipulated to the motion to vacate. The court explained to Simmons that other charges could be brought against him and that Mr. Alexander was on hand to serve as his court-appointed lawyer in that instance.

The court then entered an order declaring all proceedings that followed the not true bill "null and void." (#4, Ex. 17.) The order indicated that "the parties stipulate and move that the Judgments of Convictions and Sentences be vacated . . . that the Defendants' [sic] pleas be withdrawn, and a judgment dismissing the indictment be signed and entered by the Court."

On November 30, 2006, the District Attorney's office filed new charges in an information alleging six misdemeanor counts, including four counts of Contributing to the Sexual Delinquency of a Minor and two counts of Sexual Abuse in the Third Degree, based on the same incidents that led to the earlier, void felony conviction.[4] (#4, Ex. 18.) Mr. Alexander, serving as Simmons' court-appointed counsel, informed Simmons of the new charges. Mr. Alexander also indicated that the state made a plea offer wherein Simmons would plea guilty to two misdemeanor charges and register as a sex offender in exchange for a sentence of 30 days in jail with credit for time served on the void conviction. (#4, ¶ 23.) Simmons rejected the plea offer and obtained new counsel.

---

[4]Under Or. Rev. Stat. § 132.430, "When an indictment indorsed 'not a true bill' has been filed with the clerk of the court, the effect thereof is to dismiss the charge; and the same cannot be again submitted to or inquired of by the grand jury unless the court so orders." The State can, however prosecute misdemeanor charges arising out of the same incident without seeking another indictment. *State v. Gonzales*, 641 P.2d 42, 43 (1982).

Page 5 - FINDINGS AND RECOMMENDATION

Simmons moved to dismiss the charges on grounds that they violated state law and his right to be free from double jeopardy secured under the Oregon and U.S. Constitutions. (#4 Ex. 24.) The court denied the motion in a letter opinion. (#4, Ex. 30.) Simmons then petitioned the Oregon Supreme Court for a writ of mandamus. (#4, Ex. 32.) The Oregon Supreme Court denied the writ without comment. (#4, Ex. 35.)

Defendants LeRiche and Deuel received a state tort claim notice from Simmons regarding the state claims at issue in the present case. (#4, ¶ 33.) As a result of the potential conflict of interest engendered by the notice, they removed themselves from the case. The Oregon Attorney General's office appointed new counsel, State Defendants Tuttle and Tweedt. (#4, Ex. 31.) The government informed Simmons of its intent to amend the information and again extended a plea offer that would produce the same result as the plea agreement in the earlier, invalidated conviction. (#4, Ex. 37.) The government amended the information to remove the Contributing to the Sexual Delinquency of a Minor counts and instead charge six counts of Sexual Abuse in the Third Degree, based on the same conduct alleged in the original, void indictment. (Plaintiff's Ex. 45.) Simmons did not accept this offer.

Simmons' criminal trial is set to begin on June 9, 2008. Simmons is not in physical custody pending trial. Rather, Simmons signed a conditional release agreement, which required that he: 1) not have any contact with the victim, 2) report for trial and 3) acknowledge that a violation of those conditions would subject him to arrest and prosecution**.** (#4, Ex. 25.) Simmons currently lives in Texas and has also waived extradition. (#4, Ex. 28.)

In anticipation of the hearing on the motion for preliminary injunction, Simmons subpoenaed documents and testimony from Judge Neilson, who presided over the invalid

conviction, as well as Defendants Deuel, LeRiche, Kimble. Simmons asserted that the testimony of these witnesses was relevant to prove that they conspired to allow the State to file new charges, notwithstanding the invalid conviction, and thereby deprive him of his civil rights. This Court granted motions to quash those subpoenas in large part because the testimony did not appear to be relevant to the issues appropriately before it on the motion for preliminary injunction. (# 60.)

## ANALYSIS

### A.     Habeas Corpus Is The Exclusive Avenue to Challenge Custody

Pursuant to 28 U.S.C. § 2241(c)(3), a court has habeas jurisdiction to consider a petitioner's pre-trial claim that he "is in custody in violation of the Constitution or laws or treaties of the United States." *Stow v. Murashige*, 389 F.3d 880, 886-87 (9th Cir. 2004). A petitioner need not be in actual, physical custody to assert a habeas claim. *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 300 (1984). Rather, petitioners who are released on their own recognizance prior to trial are in custody if they are subject to "restraints not shared by the public generally." *Id.* at 301. Such restraints include the threat of criminal penalties for failure to appear at trial, waiver of extradition if apprehended outside the state, and the court's power to revoke the order of release. *Id.*

Here, Simmons seeks to enjoin the pending criminal prosecution on federal constitutional due process and double jeopardy grounds. Simmons waived extradition and signed a release agreement that provided he would be subject to arrest if he violated its conditions. Thus, Simmons is subject to restraints not shared by the public generally and thereby is in state custody for purposes of his federal habeas claim. Therefore, Simmons meets the minimum requirement

Case 3:08-cv-00343-PK   Document 62   Filed 05/16/08   Page 8 of 16


for federal habeas jurisdiction under § 2241(c)(3).[5]

"Habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim comes within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)). Thus, a § 1983 action does not lie if the plaintiff must demonstrate the invalidity of state-imposed confinement before he is entitled to relief. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Where a plaintiff's § 1983 complaint "evidenced a clear intention to state a habeas claim, . . . the district court should treat the complaint as a habeas petition." *Trimble v. City of Santa Rosa*, 49 F.3d 583, 586 (9th Cir. 1995).

Here, in addition to his federal habeas petition, Simmons asserts violations of state law as well as state and federal constitutional claims under 42 U.S.C. § § 1983 and 1985. If Simmons were to prevail in his request for preliminary injunction on those claims, that result would invalidate the state's custody pursuant to the conditional release agreement. As a result, this Court addresses Simmons' request for preliminary injunction solely as a federal habeas claim and his claims for injunctive relief under § § 1983 and 1985 should be dismissed. Accordingly, this Court does not reach the merits of Simmons' claim that defendants conspired to conduct a "sham and vindictive prosecution" (#1) in violation of his First and Fourteenth Amendment rights, or the other claims in those causes of action that do not relate to his federal constitutional guarantee to be free from double jeopardy.

---

[5]"[A] habeas petitioner who challenges a form of 'custody' other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged custody." *Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004). Simmons has named Defendant Jones, the Sheriff of Jefferson County, as the individual responsible for his custody. (#1.)

**B.     Younger Abstention**

The doctrine of *Younger v. Harris* prevents a state criminal defendant from asserting ancillary challenges to ongoing state criminal procedures in federal court except under special circumstances. 401 U.S. 37, 44-55 (1971). Thus, principles of comity and federalism require that a federal court abstain from deciding a pre-trial habeas claim unless the petitioner demonstrates 1) exhaustion of state judicial remedies and that 2) "special circumstances" warrant federal intervention. *Braden v. 30th Judicial Cir. Ct. of Kentucky*, 410 U.S. 484. 489 (1973); *Carden v. Montana*, 626 F.2d 82, 83-84 (9th Cir. 1980); *see also Younger v. Harris*, 401 U.S. 37, 44-45 (1971); *Aydiner v. Giusto*, 401 F. Supp. 2d 1129, 1132 (D. Or. 2005).

**1. Exhaustion**

Exhaustion of a pre-trial habeas claim does not require that the petitioner proceed through trial to conviction. *Braden*, 410 U.S. at 491. Rather, the petitioner need only exhaust available state remedies for consideration of the constitutional claim that underlies the federal habeas petition. *Id.*

Here, Simmons has presented his federal double jeopardy claim to the Oregon courts. The trial court denied his motion to dismiss on double jeopardy grounds. Simmons then petitioned the Oregon Supreme Court for a writ of mandate. The court denied the petition without comment. Thus, Simmons has exhausted his available state remedies as to his federal double jeopardy claim. *See Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992) (holding petitioner exhausted state remedies when trial court denied relief and state appellate court and state supreme court denied petition for review without comment).

Simmons did not present his habeas claim that the prosecution violates "his substantive

Page 9 - FINDINGS AND RECOMMENDATION

and procedural due process rights" to the Oregon courts. (#1.) As a result, this Court recommends abstention from that claim and does not reach the merits of Simmons' theory that defendants conspired to conduct a vindictive prosecution in the current criminal proceeding.

### 2. Double Jeopardy Exception

"Special circumstances" warranting federal intervention in a pending state prosecution include cases "of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). "In double jeopardy cases, the constitutional harm to be avoided is the retrial itself, not just a conviction or sentence resulting from that trial." *Wilson v. Czerniak*, 355 F.3d 1151, 1157 (9th Cir. 2004). Consequently, a claim that a state prosecution will violate the Double Jeopardy Clause presents an exception to *Younger* abstention. *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992) ("Because full vindication of the right necessarily requires intervention before trial, federal courts will entertain pretrial habeas petitions that raise a colorable claim of double jeopardy.")

Here, Simmons has exhausted his federal double jeopardy claim. The claim, moreover, constitutes a "special circumstance" warranting this Court's intervention. As a result, this Court can reach the merits of Simmons' double jeopardy claim.

### C. Merits of the Double Jeopardy Claim

The Double Jeopardy Clause "affords a defendant three basic protections." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). First, it protects against a second prosecution for the same offense after an acquittal. *Id.* (*citing Brown v. Ohio*, 432 U.S. 161, 165 (1977)). However, a court's ruling in the defendant's favor constitutes an acquittal only when the judge resolved

Page 10 - FINDINGS AND RECOMMENDATION

factual elements of the offense charged. *United States v. Scott*, 437 U.S. 82, 96 (1978). Second, the Double Jeopardy Clause protects against a successive prosecution for the same offense after conviction. *Johnson*, 467 U.S. at 498. Finally, the clause protects against multiple punishments for the same offense. *Johnson*, 467 U.S. at 498. This protection "ensures that after a subsequent conviction a defendant receives credit for time already served." *Id.* at 499.

Here, the court's order declaring the proceedings void due to the not true bill was not an acquittal, as it did not address any factual elements of the charged offenses. In addition, Simmons has no claim with regard to multiple punishments because he has not been convicted or punished in the pending state criminal case. Therefore, Simmons' claim properly focuses on avoiding a successive prosecution for the same offense.

### 1. Attachment of Jeopardy

The Double Jeopardy Clause "does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.'" *Serfass v. United States*, 420 U.S. 377, 391 (1975) (citing *Kepner v. United States*, 195 U.S. 100, 132 (1904)). When a defendant enters a plea of guilty, "jeopardy ordinarily attaches as to that crime upon acceptance of the plea by the court." *United States v. Vaughan*, 715 F.2d 1373, 1378 n.2 (9th Cir. 1983). Where the court had no jurisdiction to hear that plea, however, jeopardy does not attach. *Grafton v. United States*, 206 U.S. 333, 345 (1907) ("[B]efore a person can be said to have been put in jeopardy of life or limb, the court in which he was acquitted or convicted must have had jurisdiction to try him for the offense charged.").

Under Oregon law, when a grand jury returns a not true bill, it effectively dismisses the charge. Or. Rev. Stat. 132.430(2); *State of Oregon v. Gonzales*, 641 P.2d 43, 43 (Or. App.

Page 11 - FINDINGS AND RECOMMENDATION

1982). Therefore, this Court questions whether the state court had jurisdiction to hear Simmons' plea because the grand jury's return of the not true bill dismissed the charges. This Court need not resolve that state law issue, however. Even if Simmons' plea placed him in jeopardy, he cannot demonstrate that the prosecution he now faces constitutes double jeopardy as a matter of federal law.

### 2. Same Offense

The Double Jeopardy Clause bars both a second prosecution for the same offense and re-litigation of an issue necessarily decided in the defendant's favor. "Where the same act . . . constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Brown v. Ohio*, 432 U.S. 161, 165 (1977). Alternately, the Double Jeopardy Clause embraces a collateral estoppel component and thus "prevents the government from seeking to prosecute a defendant on an issue that has been determined in the defendant's favor in a prior prosecution." *United States v. Castillo-Basa*, 483 F.3d 890, 896 (9th Cir. 2007) (citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). The criminal defendant bears the burden "to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States*, 493 U.S. 342, 350 (1990).[6]

---

[6] Simmons asserts that, "[u]nder the Double Jeopardy Clause, the 'same offense' has been held to be the same operative set of facts - regardless of how many alternate theories of liability the state can attach to those facts." (#3.) While the Supreme Court at one time held that view, *Grady v. Corbin*, 495 U.S. 508, 521 (1990), it has since explicitly rejected it. *United States v. Dixon*, 509 U.S. 688, 704 (1993) ("The 'same-conduct' rule [*Grady*] announced is wholly inconsistent with earlier Supreme Court precedent and with the clear common-law understanding of double jeopardy.").

Page 12 - FINDINGS AND RECOMMENDATION

Under the *Blockburger* test, the new and former charges each require proof of a fact that the others do not. The void indictment charged Simmons with rape and sodomy. The current information charges him with sexual abuse. Under Oregon law, "rape requires sexual intercourse, whereas sexual abuse does not." *State v. Spring*, 21 P.2d 657, 660 (Or. Ct. App. 2001). Similarly, sodomy requires "sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another," Or. Rev. Stat. § 163.305, whereas sexual abuse does not. Or. Rev. Stat. § 163.415; *see Spring*, 21 P.2d at 660. "Conversely, sexual abuse requires sexual contact, which requires touching the sexual or other intimate parts of another person *for the purpose of arousing or gratifying the sexual desire* of either party, whereas rape does not, *Spring*, 21 P.2d at 660, nor does sodomy. *See State v. Jalo*, 696 P.2d 14, 16 n.2 (Or. Ct. App. 1985) (extending analysis of rape statute to sodomy statute because the statutes "are essentially identical"). Thus, the new charges pass the *Blockburger* test. Under collateral estoppel, although Simmons argues otherwise, this aspect of Double Jeopardy does not bar the prosecution. While the current charges arise out of the same facts that led to the first, void indictment, no issues of fact were decided in Simmons' favor. Thus, Simmons has not met his burden to establish that the collateral estoppel aspect of Double Jeopardy Clause bars his current prosecution.

### 3. Manifest Necessity

Finally, even if the current prosecution were for the same offense, Simmons' double jeopardy claim would fail. The Double Jeopardy Clause does not automatically bar retrial when a criminal proceeding ends without finally resolving the merits of the charges against the

Page 13 - FINDINGS AND RECOMMENDATION

accused. *Arizona v. Washington*, 434 U.S. 497, 505 (1978). The general prohibition against successive prosecutions, "does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside . . . because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988)*; see also United States v. Ball*, 163 U.S. 662, 671 (1896). When a defendant successfully moves to terminate proceedings on a basis unrelated to factual guilt or innocence, "the Double Jeopardy Clause, which guards against government oppression, does not relieve a defendant from the consequences of his voluntary choice." *United States v. Scott*, 437 U.S. 82, 99 (1978).

In addition, when a proceeding "at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice." *Illinois v. Somerset*, 410 U.S. 458, 471 (1973). Thus, double jeopardy poses no bar to retrial where the court dismissed the original indictment for "manifest necessity." *Washington*, 434 U.S. at 505. Manifest necessity exists where the error "'would make reversal on appeal a certainty.'" *Wilcox v. McGee*, 241 F.3d 1242, 1245 (9th Cir. 2001) (citing *Weston v. Kernan*, 50 F.3d 633, 638 (9th Cir. 1995).

Here, Simmons argues that he did not voluntarily seek to terminate the proceedings or overturn his conviction. Rather, he asserts that Kimble did not act on his behalf when she stated in open court that he stipulated to vacate the conviction and sentence. Even if this complaint sounds in double jeopardy, which is itself a dubious contention, Simmons offers no explanation of what else the prosecutors, his attorney or the trial court could have done. If the trial judge did not vacate the conviction and sentence, Simmons could have it overturned on appeal or in post-conviction. The trial judge faced a manifest necessity to declare the conviction void, and thus

Page 14 - FINDINGS AND RECOMMENDATION

that act poses no double jeopardy bar to re-trial.

Simmons double jeopardy claim fails because the charges he faces in the pending state prosecution are not the same offense as the charges the grand jury dismissed in the former prosecution. Moreover, even if the charges constituted the same offense, the trial court faced a manifest necessity to void the earlier proceedings and thus double jeopardy does not bar the current prosecution. As a result, Simmons federal habeas petition should be denied.

## CONCLUSION

For the reasons set forth above, Simmons' claims for injunctive relief under § § 1983 and 1985 should be dismissed and his federal habeas petition should be denied.[7]

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due May 26, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due five days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.[8]

Dated this 16th day of May, 2008.

---

[7] The Court has abstained from deciding Simmons' substantive and procedural due process habeas claims alleging vindictive prosecution. Moreover, the Court expresses no opinion on his claims for damages under § § 1983 and 1985 to the extent that they assert constitutional violations apart from double jeopardy. The Court will address these and the other remaining claims in its ruling on Defendants' several motions to dismiss.

[8] The parties stipulated to these deadlines at the hearing, in light of the June 9, 2008 date set for the pending criminal prosecution.

Page 15 - FINDINGS AND RECOMMENDATION

                            /s/ Paul Papak
                            Honorable Paul Papak
                            United States Magistrate Judge